UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SHARON M. FOX, | ) | Case No. EDCV 05-0210-JTL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PROCEEDINGS**

On March 11, 2005, Sharon M. Fox ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of her application for supplemental security income. On April 7, 2005, the parties filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on September 15, 2005, defendant filed an Answer to Complaint. On December 12, 2005, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

**BACKGROUND**

On July 26, 2001, plaintiff filed an application for supplemental security income. (Administrative Record ["AR"] at 32-34). In her application, plaintiff claimed that, beginning on September 2, 1994, the following ailments prevented her from working: a siatic nerve in her back, numbness in her left leg, chest pain, numbness in her hand and feet, inability to concentrate or remember, drug addiction, a prison record, dyslexia, and hepatitis C. (AR at 113). The ALJ later amended her onset date to July 26, 2001. (AR at 15). The Commissioner denied plaintiff's application for benefits both initially and upon reconsideration. (AR at 58-61, 65-68). Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 69).

On October 23, 2003, the ALJ conducted a hearing in San Bernardino, California. (AR at 32-55). Plaintiff appeared at the hearing with counsel and testified. (AR at 34-49). Joseph Mooney, a vocational expert, also testified. (AR at 49-54).

On February 20, 2004, the ALJ issued his decision denying benefits. (AR at 18-25). In his decision, the ALJ concluded that plaintiff suffered from the following severe impairments: lumbar spondylolysis, degenerative joint disease, carpal tunnel syndrome, and Hepatitis C. (AR at 21). According to the ALJ, however, these impairments did not meet or equal any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (Id.). The ALJ also found that, based upon her residual functional capacity, plaintiff retained the capacity to perform light work activity and can frequently perform fine fingering, grasping, pushing, and pulling at that level. (Id.). Ultimately, the

2

1  ALJ found that plaintiff was not disabled pursuant to the Social

2  Security Act.  (AR at 24).

3      On March 10, 2004, plaintiff filed a timely request with the

4  Appeals Council for review of the ALJ's decision.  (AR at 13).  On

5  March 7, 2005, the Appeals Council affirmed the ALJ's decision.  (AR

6  at 6-9).

7

8                    **PLAINTIFF'S CONTENTIONS**

9      Plaintiff makes the following claims in the Joint Stipulation:

10     1.  The ALJ failed to properly consider all available medical

11  evidence regarding plaintiff's musculoskeletal impairments.

12     2.  The ALJ failed to properly consider all available medical

13  evidence regarding plaintiff's mental impairments.

14     3.  The ALJ failed to properly consider plaintiff's subjective

15  complaints and properly assess plaintiff's credibility.

16     4.  The ALJ's hypothetical to the vocational expert was improper

17  and incomplete.

18

19                    **STANDARD OF REVIEW**

20     The Court reviews the ALJ's decision under 42 U.S.C. § 405(g) to

21  determine whether the ALJ's findings are supported by substantial

22  evidence and whether the proper legal standards were applied.  DeLorme

23  v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence

24  means "more than a mere scintilla" but less than a preponderance.

25  Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v.

26  Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir.

27  1988).

28  ///

                                3

1    Substantial evidence is "such relevant evidence as a reasonable
2  mind might accept as adequate to support a conclusion." <u>Richardson</u>,
3  402 U.S. at 401.   This Court must review the record as a whole and
4  consider adverse as well as supporting evidence.   <u>Green v. Heckler</u>,
5  803 F.2d 528, 529-30 (9th Cir. 1986).   Where evidence is susceptible
6  of more than one rational interpretation, the ALJ's decision must be
7  upheld.   <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1452 (9th Cir. 1984).

8

9                              **DISCUSSION**
10  **A.   <u>Plaintiff's Mental Impairments</u>**

11    Plaintiff claims that the ALJ erred in finding that plaintiff's
12  mental impairments did not constitute a severe impairment.   According
13  to plaintiff, the ALJ ignored the evidence in the record with regard
14  to the severity of her limitations.   Plaintiff contends that the
15  combination of her learning disability, major depression, and GAF
16  score of 45 amount to a severe impairment.

17    "An impairment or combination of impairments is not severe if it
18  does not significantly limit [the claimant's] physical ability to do
19  basic work activities."   20 C.F.R. § 404.1521(a).   Basic work
20  activities include the "abilities and aptitudes necessary to do most
21  jobs," such as "understanding, carrying out, and remembering simple
22  instructions" and "responding appropriately to supervision, co-workers
23  and usual work conditions."   20 C.F.R. § 404.1521(b)(3)-(4); <u>see also</u>
24  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996); <u>Yuckert v.</u>
25  <u>Bowen</u>, 841 F.2d 303, 306 (9th Cir. 1988).   "An impairment or
26  combination of impairments can be found 'not severe' only if the
27  evidence establishes a slight abnormality that has 'no more than a
28  minimal effect on an individual's ability to work.'"   <u>Smolen</u>, 80 F.3d

                                    4

at 1290 (quoting Yuckert, 841 F.2d at 306).  The severity inquiry at step two is a de minimus screening device, intended to allow the Commissioner to dispose of groundless claims.  Bowen v. Yuckert, 482 U.S. 137, 153 (1987); Smolen, 80 F.3d at 1290.

Here, the ALJ found that plaintiff's mental impairments did not constitute a severe impairment.  Specifically, the ALJ noted that plaintiff's mental impairments did not significantly limit her ability to understand, remember, and carry out simple instructions; to respond appropriately to supervision, co-workers, and usual work situations; or to deal with changes in routine work settings.  Plaintiff's treating doctor, however, diagnosed her with major depression and a Global Assessment of Functioning[1] ("GAF") score of 45.  (AR at 353).  A GAF score between 41 to 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  Diagnostic and Statistical Manual of Mental Disorders 34 (4th. ed, rev. 2000).  Notwithstanding the low GAF score from a treating physician and its support of plaintiff's claim of disability, the ALJ did not address this GAF score in his decision.  Such omission constitutes error.[2]

_____

[1]  "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment."  Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

[2]  The medical opinion of plaintiff's treating physician is entitled to special weight.  Reddick v. Chatter, 157 F.3d 715, 725 (9th Cir. 1998).  "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing."  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); see also

(continued...)

Defendant and the ALJ noted that medical consultants who evaluated plaintiff found her capable of work. Ernest Bagner, III, M.D., performed a Complete Psychiatric Evaluation and assessed plaintiff with a GAF score of 70.[3] (AR at 270-73). Dr. Bagner also opined that plaintiff was able to interact with a supervisor, carry out simple three-part commands, would likely be able to carry out repetitive tasks, and would be able to handle a moderate degree of stress found in typical work environments. (AR at 273). Ahmad R. Riahinejad, Ph.D, a clinical psychologist, performed a Complete Psychological Evaluation on plaintiff and opined that her ability to function in a typical work setting was not impaired by any psychological reasons. (AR at 281-84). Dr. Riahinejad administered the Wechsler Adult Intelligence Scale-Third Edition on plaintiff and assessed her with a verbal I.Q. of 73, a performance I.Q. of 84, and a full-scale I.Q. of 76, which placed her in the "borderline range of intelligence." (AR at 283). The Department of Corrections also evaluated plaintiff and assessed her with a GAF score of 75. (AR at 185).

///

---

[2](...continued)
<u>Saelee v. Chater</u>, 94 F.3d 520 (9th Cir. 1996). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. <u>Reddick</u>, 157 F.3d at 725. Here, the ALJ failed to even mention the treating physician's GAF score, much less interpret or reject it.

[3] A person with a GAF score of 61 to 70 exhibits, "Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Diagnostic and Statistical Manual of Mental Disorders 34 (4th. ed, rev. 2000).

Although the plaintiff had medically determinable mental impairments, the ALJ found that these impairments did not limit her ability to function in daily living, social functioning, concentration, persistence, and pace, and episodes of deterioration or decompensation. (AR at 20). For that reason, the ALJ rejected plaintiff's dysthymic disorder[4] as not severe. But whether there was enough evidence to find that plaintiff's mental impairments sufficiently impacted her ability to do work is a separate issue. Notwithstanding the opinions of physicians that plaintiff could work and the ALJ's determination that the impairments did not limit her ability to function, plaintiff's treating physician at the Barstow Counseling & Behavioral Health Center assessed her with a GAF score that essentially rendered her disabled. This assessment was supported by Dr. Riahinejad's assessment of borderline intellectual functioning. Additionally, plaintiff took medications to treat depression, namely Zoloft (AR at 115, 271, 351, 355) and Wellbutrin (AR at 362).[5] The

---

[4] "Dysthymia, sometimes referred to as chronic depression, is a less severe form of depression but the depression symptoms linger for a long period of time, perhaps years. Those who suffer from dysthymia are usually able to function adequately, but seem consistently unhappy."
http://www.webmd.com/content/article/62/71503.htm

[5] Zoloft is a brand name of the medication Sertraline. "Sertraline is used to treat depression, panic attacks, obsessive compulsive disorders, post-traumatic stress disorder, social anxiety disorder (social phobia), and a severe form of premenstrual syndrome (premenstrual dysphoric disorder). It is known as a selective serotonin reuptake inhibitor (SSRI)."
http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Zoloft"; follow "Sertraline Oral" hyperlink; then follow "Uses").
Wellbutrin is a brand name of the medication Bupropion. "Bupropion is used to treat depression. It can improve your mood and feelings of well-being." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Wellbutrin"; follow "Wellbutrin Oral" hyperlink; then
(continued...)

7

1  sum of these circumstances is sufficient to meet the de minimus

2  standard that must be applied to the Step Two severity inquiry.  See

3  Bowen, 482 U.S. at 153; Smolen, 80 F.3d at 1290.

4  **B.   Reversal and Remand is Appropriate**

5       The choice whether to reverse and remand for further

6  administrative proceedings, or to reverse and simply award benefits,

7  is within the discretion of the Court.  McAlister v. Sullivan, 888

8  F.2d 599, 603 (9th Cir. 1989).  Remand is appropriate where additional

9  proceedings would remedy defects in the ALJ's decision, and where the

10 record should be developed more fully.   Id; see also Rodriquez v.

11 Bowen, 876 F.2d 759, 763 (9th Cir. 1989); Marcia v. Sullivan, 900 F.2d

12 172, 176 (9th Cir. 1990).  An award of benefits is appropriate where

13 no useful purpose would be served by further administrative

14 proceedings, see Gamble v. Chater, 68 F.3d 319, 322-23 (9th Cir.

15 1995), where the record has been fully developed, see Schneider v.

16 Commissioner of the Social Security Administration, 223 F.3d 968, 976

17 (9th Cir. 2000); Ramirez v. Shalala, 8 F.3d 1449, 1455 (9th Cir.

18 1993), or where remand would unnecessarily delay the receipt of

19 benefits.  See Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

20      In this case, the Court finds remand appropriate.  On remand,

21 the ALJ must determine whether the evidence establishes a severe

22 mental impairment.  The ALJ must then determine whether the severe

23 impairments meets or equals a listed impairment.  At the step two

24 inquiry, the ALJ must consider the combined effect of all plaintiff's

25 impairments on plaintiff's ability to function, without regard to

26 whether each alone was sufficiently severe.  See Smolen, 80 F.3d at

27

28  [5](...continued)
    follow "Uses").

8

1  1290.   The ALJ must then determine whether the impairment prevents

2  plaintiff from performing work she has performed in the past.   If

3  plaintiff cannot perform her past work, the ALJ must finally determine

4  whether she is able to perform other work in the national economy in

5  light of her age, education, and work experience.[6]

6                                  **ORDER**

7         The Court, therefore, VACATES the decision of the Commissioner

8  of Social Security Administration and REMANDS this action for further

9  administrative proceedings consistent with this Memorandum Opinion and

10  Order.

11  DATED: March 30, 2006

12

13                                        _____/s/_____
                                          JENNIFER T. LUM
14                                        UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20  _____

21        [6]   In the Joint Stipulation, plaintiff also argues that the
    ALJ erred in failing to properly consider all available medical
22  evidence regarding plaintiff's musculoskeletal impairments,
    failing to properly consider plaintiff's subjective complaints
23  and properly assess plaintiff's credibility, and presenting an
    improper and incomplete hypothetical to the vocational expert.
24  As explained above, however, the ALJ's failure to find that
    plaintiff suffers from a severe mental impairment constitute
25  sufficient reason to remand this case.   Moreover, depending on
    the outcome of the proceedings on remand, the ALJ will have an
26  opportunity to address plaintiff's other arguments.   In any
    event, the ALJ should consider all the issues raised by plaintiff
27  in the Joint Stipulation when determining the merits of
    plaintiff's case on remand.
28